IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
EX REL. JAMES A. ROARK, SR.
4661 Hidden Lake Drive
Port Orange, FL 32129,

        Plaintiff

v.

CHILDREN'S HOSPITAL,
CHILDREN'S NATIONAL MEDICAL CENTER, INC.
AND ALL RELATED COMPANIES OWNED,
OPERATED AND MANAGED BY SAME,

and

MARTIN EPSTEIN, PETER YOUNG, DOUGLAS MYERS,
CARMEN MENDEZ, ROGER P. ZIEGLER, JONI BAKER,
DAVID SPARKS, ROBERT GRADY, and PAUL PECHACEK

        Defendants.

Case No. _____

**UNDER SEAL**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff United States of America, through a Relator, James A. Roark, Sr. ("Relator"), brings this action pursuant to 31 U.S.C. 3279 and 18 U.S.C. § 1962 against Defendants Children's Hospital, Children's National Medical Center, Inc. and Martin Epstein, Peter Young, Douglas Myers, Carmen Mendez, Roger P. Ziegler Joni Baker, David Sparks, Robert Grady, and Paul Pechacek to recover Federal monies that Defendants wrongfully obtained from the U.S. Department of Health and Human Services and the Medicaid State Plans of the District of Columbia, Commonwealth of Virginia, and the State of Maryland ("State Governments") through false or fraudulent conduct, alleging as follows:

## COUNT I

1. Relator was employed by Children's Hospital ("CH") to perform services including regulatory analysis, cost report filings and compliance.

2. CH through its Parent entity Children's National Medical Center, Inc. (CNMC) owns and manages a number of related health care entities and operations in the District of Columbia, Commonwealth of Virginia and State of Maryland.

3. Martin Epstein is an employee of CH and the Executive Director, Reimbursement.

4. Peter Young is an employee of CH and the Lead Project Coordinator for the Reimbursement Department.

5. Douglas Myers is an employee of CH and the Chief Financial Officer (CFO) for CH.

6. Carmen Mendez is an employee of CH and the Executive Director, Research a/k/a Children's Research Institute, Inc. (CRI), a separately incorporated company.

7. Roger P. Ziegler is an employee of CH and the Executive Director, Financial Planning & Decision Support.

8. Joni Baker is an employee of CH and the Director Budget and Analysis.

9. David Sparks is an employee of CH and the Vice President Finance.

10. Robert Grady is an employee for CH and the Director of Disbursements.

11. Paul Pechacek is an employee of CH and the Director, Finance.

12. All financial data for CH and all its related entities are maintained by CH and financial statements are generated by CH for CH and all its related entities. CH

maintains a complex set of accounting books for itself and all of its related entities. All its related entities operate pursuant to CH policies and procedures.

13. Plaintiff discovered that CH intentionally under reported the number of available beds on the Medicare and Medicaid Cost Reports. Doing so resulted in CH having a high ratio of Interns and Residents to available beds. The higher ratio resulted in CH receiving increased Indirect Medical Education (IME) payments (Grant Funds) from the Department of Health and Human Services (DHHS) Health Services and Resource Administration (HRSA)

14. By willfully and knowingly submitting a report which has intentionally under reported the number of "available beds" (as required by Medicare Regulations and Medicare Policy), Defendant CH is in violation of 31 U.S.C. 3279. Both the U.S. Government and Medicaid Programs have suffered damages which have resulted from CH intentionally understating its "available beds" used in the calculation of the "Interns to Available Beds" ratio calculated from its filed Medicare and Medicaid Cost Reports. Defendant hospital is liable to the United States Government and State Governments for a civil penalty of not less than $5,000.00 but not more than $10,000.00 for each and every false claim filed and are liable for an amount equal to three times the damages the Government sustained, for every cost report, Form CMS 2252-96 and CMS 2552-10, and State Government Medicaid Cost Reporting forms– DRG-796 filed since fiscal year (FY) 2000.

## COUNT II

15. Plaintiff realleges paragraphs 1 through 14 as though fully set forth herein.

16. Plaintiff discovered that CH intentionally filed two different Medicare Cost Reports (Forms CMS 2252-96 and CMS 2552-10) with two different Federal agencies (Medicare and DHHS Department of Cost Allocation (DCA). CH targeted DCA to receive the false Cost Report to intentionally claim higher "overhead costs" which would be used by DCA to set the Indirect Cost Rate (ICR) for CH's Research Company, (CRI.). The higher overhead cost filed with DCA resulted in a higher ICR used to calculate Federal Grant payments to CRI. Federal Policy requires that the Medicare Cost Reports submitted to Medicare and another Federal Agency (DCA) be consistent with one another. CH's filed Medicare Cost Report, which calculated the overhead/indirect cost that CH incurred for CRI, was accepted by Medicare. Medicare made final settlement to CH based upon these reported costs. Under Medicare and CMS Reimbursement Policies only one set of numbers is permissible. The CRI overhead/indirect costs reported by CH on its filed and settled Medicare Cost Report are the costs that DCA should have used to develop CRI/s Indirect Cost Rate. CH filed two different Medicare Cost Reports (one to Medicare and a second and different Medicare Cost Report with DCA to intentionally obtain a higher than justified Indirect Cost Rate from DCA) for FY 2000 through the present.

## COUNT III

17. Plaintiff realleges paragraphs 1 through 16 as though fully set forth herein.

18. CH has failed to correctly bill State Government Medicaid claims for Medicaid patients who have other health insurance as is required by State Government Medicaid billing policy and procedure. CH undertook this practice in order not to refund to State Government Medicaid these "Primary Insurance Payments," which CH is

required to refund when a Medicaid eligible patient has other insurance coverage in addition to their Medicaid coverage.

## COUNT IV

19. Plaintiff realleges paragraphs 1 through 18 as though fully set forth herein.

20. CH has used its Sheikh Zayed Cost Center (Department) to solicit patient referrals from physicians. CH knowingly violated the "Stark Law".

## COUNT IV (A)

21. Plaintiff realleges paragraphs 1 through 20 as though fully set forth herein.

22. CH failed to maintain the necessary auditable times studies or other documentation to support its allocation of Physician Compensation between Administrative (Part A) and Clinical (Part B) for the Medicare/Medicaid Cost Reports for Cost Reporting Periods 2013 and prior. This action by CH violated Section 1861 (V) (1) (a) of the Social Security Act and the provisions of the Reasonable Compensation Equivalents Regulations, and HIM 15-1 sections 2304 and 2314(E), et al.

## COUNT IV (B)

23. Plaintiff realleges paragraphs 1 through 22 as though fully set forth herein.

24. CH failed to maintain the necessary auditable records to support its determination cost incurred to support non-reimbursable activities and/or related Entities as required by Medicare/Medicaid reimbursement principles for the Medicare/Medicaid Cost Reports for Cost Reporting Periods 2013 and prior. CH violated Section 1861 (V) (1) (a) of the Social Security Act and HIM 15-1, Sections 2304 and 2328.

## COUNT IV (C)

25. Plaintiff realleges paragraphs 1 through 24 as though fully set forth herein.

26. CH failed to comply with the provisions of HIM 15-1, Section 2162 et al. (Offshore Captive Insurance Company – "Bearracuda".)

## COUNT IV (D)

27. Plaintiff realleges paragraphs 1 through 26 as though fully set forth herein.

28. CH entered into various compensation agreements for the Medicare/Medicaid Cost Reporting periods 2013 and prior with its employed Physicians. Such compensation included annual salary, bonus, stipends, honorariums, based on number or value of physician referrals and other incentives based on business generated by the physicians. These arrangement are the foundation of illegal forms of kickbacks, or profit sharing, in violation of federal law. By knowingly submitting claims for reimbursement based on referrals generated by physicians who received overly lucrative payments, CH violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., the Stark Act, and was unjustly enriched.

## COUNT V

29. Plaintiff realleges paragraphs 1 through 28 as though fully set forth herein.

30. CH's use of cost reports constitutes fraud. CH uses this method to (1) receive IME Payments from HRSA to which it is not entitled to receive under Medicare Regulations and Policy and from State Government Medicaid Programs, which is not in keeping with each State's (Federally approved) Medicaid Program; and (2) be paid a higher ICR from Federal and State Grants which is not justified by the Medicare Cost Reports which have been sent to DHHS DCA. This fraud has occurred because Medicare

has not audited CH's Medicare Cost Reports and other Federal Agencies have failed to check with CH's Medicare Fiscal Intermediary as to the validity of the critical information contained within CH's filed cost reports.

31. As part of the fraudulent scheme, CH's Executive Director, Reimbursement willfully signs the certification on cost report forms CMS 2552-96 and CMS 2552-10 and State Government Medicaid Forms knowing that it is not true. The filed cost report does not show the same liability to Medicare and Medicaid that CH's books show. Under section 3402(d) of the PPACA, providers must report and return identified overpayments to HHS, the State, an intermediary, a carrier, or government contractor by the later of: 1.) 60 days from the date the overpayment is identified; or 2.) the date any corresponding cost report is due. CH has violated both these requirements.

32. CH is liable for penalties allowed by law for making a false certification on the front page of the cost report, CMS 2552-96, CMS 2552-10, and State Government forms for each report filed from 2000 through the present (and earlier).

## COUNT VI

33. Plaintiff realleges paragraphs 1-32 as though fully set forth herein.

34. Defendants are guilty of conspiracy in defrauding both the United States and State Governments. CH has used the same method to prepare cost reports since before fiscal year 2000.

35. The cost report method was developed by CH and used in the preparation of every cost report filed by CH or its parent company, CNMC, Inc.

36. The cost reports are prepared by CH Reimbursement Department and certified by the Executive Director, Reimbursement. Once they are signed they are

forwarded to Medicare and Medicaid as CH's officially filed cost report. The Executive Director, Reimbursement has been fully informed and notified of the false claims contained within the filed cost reports and is integral part of the conspiracy in addition to the CFO and other members of CH's Finance Department. A provider who knows that it owes monies to HHS is obligated to advise HHS of the liability and refund the monies to HHS.

37. CH owns and manages one (1) hospital, which currently prepares and submits six certified cost reports to both Medicare and Medicaid Agencies. Since CH's Fiscal Year 2000 these certified reports total more eighty (80) submissions. However, these false cost reports began long before FY 2000. CH has filed over eighty (80) false Medicare and Medicaid cost reports (each containing hundreds of pages) since FY 2000 (and beyond) and continued this conspiracy. Payment rates, which were based on these false cost reports, have further continued the submission of false claims against the Federal and State Governments.

38. The cost reporting method used by all of the defendants constitutes a pattern of racketeering, and the defendants have committed a violation of the Racketeering Influenced and Corrupt Organization Act (RICO) 18 U.S.C. § 1962.

39. By reason of the above methods the U.S. Government and the State Governments for the District of Columbia, Maryland, and the Commonwealth of Virginia have been injured in an amount to be ascertained. In addition Plaintiff is entitled to recover threefold the damages the Government has sustained as well as costs of suit, including reasonable attorney's fees, pursuant to 18 U.S.C. § 1964.

WHEREFORE, Plaintiff prays judgment against Defendants for the amount awarded by a jury, court costs, and such other further relief as the Court deems just and appropriate.

**A JURY TRIAL IS DEMANDED.**

DATED this 15th day of April, 2014.

Respectfully submitted,

/s/ Harvey J. Volzer
Harvey J. Volzer
DCB 263525
Shaughnessy & Volzer, P.C.
216 S Patrick Street
Alexandria, VA  22314
Phone: (703) 549-0446
Fax: (703) 549-0449
volzer@svg-law.com
*Attorney for Relator*
*James A. Roark, Sr.*

CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the foregoing was hand-delivered on April 15, 2014 to:

    Brian Hudak
    Assistant United States Attorney
    501 Third Street, NW, Fourth Floor
    Washington, D.C. 20001

                      Harvey J. Volzer
                      VSB 263525
                      Shaughnessy & Volzer, P.C.
                      216 S Patrick Street
                      Alexandria, VA 22314
                      Phone: (703) 549-0446
                      Fax: (703) 549-0449
                      volzer@svg-law.com
                      *Attorney for Relator*
                            *James A. Roark, Sr.*

## APPENDIX

I. <u>Exhibits</u>

1. Impact on the "Interns to Available Beds" Ratio.

2. Beds reported versus available beds.

3. Children's Hospital funding application.

4. Children's Hospital payment methodology.

5. "Available Beds" emails.

6. "Available Beds" supporting documentation.

7. Overview of Children's Hospital false claims.

8. Children's Hospital Medicare Cost Reports.

9. Impact on TEFRA settlements due to false reporting of overhead costs.

10. DHHS program policy and regulation.

11. Virginia primary reporting of payment policy.

12. Stark Law violation.

13. Commonly-used acronyms.